FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

98 FEB 23  AM 9: 20

U.S. DISTRICT COURT
N.D. OF ALABAMA

ELLIOT EVANS,                    )
                                 )
        Plaintiff,               )
                                 )
vs.                              )    **Civil Action No. CV96-S-2801-S**
                                 )
PEMCO AEROPLEX, INC.,            )
                                 )                    **ENTERED**
        Defendant.               )

                                      **FEB 2 3 1998**

#### MEMORANDUM OPINION

Elliott Evans alleges Pemco Aeroplex, Inc. discriminated against him on the basis of his race (African-American) and disability (diabetes) in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 24 U.S.C. §§ 2000e *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and 42 U.S.C. § 1981. The action is before the court on Pemco's motion for summary judgment. Upon consideration of pleadings, briefs, and evidentiary submissions, the court concludes the motion is due to be granted.

### I.  FACTS

### A.  Work in Excess of Plaintiff's Restrictions

Pemco refurbishes aircraft at a facility adjacent to the Birmingham, Alabama airport. Elliott Evans has worked for Pemco or its predecessors[1] at that facility since 1956. Evans was diagnosed with diabetes mellitus during 1966, and since then he has labored

---

[1]The record reveals that one of those predecessors was Hayes International Corporation.

31

under a physician's restriction to not climb or work at heights.[3]
(Plaintiff's deposition at 22-23.)

Plaintiff was not required to perform duties that violated his
physician's restrictions until about December of 1994 (*id.* at 21,
23, 50-51), when he was assigned to the position of "cleaner" on a
"crew" of employees supervised by Carl Bonds.  (Bonds deposition at
7, 9.)  The members of Bonds' crew were required to climb and work
at heights in order to clean areas inside aircraft.[4]  (*Id.* at 10,
57.)

When Carl Bonds first directed Evans to climb, Evans balked:
he told Bonds that his physician had instructed him not to do so.
(Plaintiff's deposition at 25; Bonds deposition at 10.)   Bonds
conferred with employees in Pemco's medical and personnel
departments, but they were unable to confirm Evans' alleged work
restrictions.[5]  (Bonds deposition at 11-12.)  Instead, the medical
department showed Bonds a "physician's release to return to work,"
allegedly saying that Evans could work with no restrictions.[6]

---

[3]   Plaintiff also walks with an "unsteady gait," but it is not clear
whether that condition is a result of his diabetic condition.  (Plaintiff's
deposition exhibit 3.)

[4]According to Carl Bonds, Evans' position "required climbing. ... You have
to get on the aircraft to do the job."  (Bonds deposition at 23.)

[5]In opposition to summary judgment, plaintiff submitted "attending
physician's reports" for Elliott Evans from 1988 and 1991 on letterhead for Hayes
International Corporation, one of Pemco's predecessors.   The 1988 report
restricted Evans from climbing or working at heights.  The 1991 report restricted
him only from working at heights, and noted he was "previously unable to climb."
(Plaintiff's exhibits 14, 19.)

[6]Elliott Evans claims that release was not the release provided to Pemco
by his doctor.  In support of that claim, he presents the March 20, 1995 letter
of his physician, Dr. James G. Davis, which states:

> Elliott Evans came by my office and picked up a copy of the
> physician's release for return to work.  Someone has marked the
> capacity section for Mr. Evans.  It was not done in this office.
> Please correct this statement as soon as possible.  The diagnosis is

2

(Bonds deposition at 17-18.)  Evans claims he climbed and worked at heights for a period thereafter, because Bonds threatened him: "do this or [else]."  (Plaintiff's deposition at 28, 33.)  Bonds denies that, claiming he instructed Evans to refrain from climbing. (Bonds deposition at 20.)

Evans obtained a verification of his work restrictions from Dr. Steve Hunt on February 17, 1995, and presented the following letter to Pemco's medical and personnel departments shortly thereafter:

> I request that Mr. Evans not be involved in work activities that involve climbing or working at heights, due to the risk of hypoglycemia from his diabetes treatment regimen and also because of his unsteady gait.

(Plaintiff's deposition exhibit 3.)

That verification was closely followed by a charge of discrimination which Evans filed with the EEOC on February 21, 1995:

> I have a disability which restricts climbing.  The company has accommodated my restriction for almost 30 years.  However, since February 1995, the company has refused to accomod [sic] my disability and has harassed me in the performance of my duties.
>
> Carl Bonds, Supervisor, has given me no reason for his refusal to accommodate my disability nor has he indicated why he is harassing me.
>
> I believe that I am being discriminated against in violation of the Americans with Disabilities Act as well as Title VII of the 1964 Civil Rights Act, as amended, in

---

Tenosynovitis ("inflammation of a tendon sheath," Dorland's Illustrated Medical Dictionary 1558 (W.B. Saunders et al. eds., 28th ed. 1994)], and arthritis.  This is work related.

(Plaintiff's exhibit 8.)  That letter merely states that the "work capacity" section of the release should not have been completed.  It provides no insight into what restrictions (if any) Dr. Davis imposed.

3

that White employees under Mr. Bonds supervision are not being harassed.

(Plaintiff's deposition exhibit 8.)

In March or April of 1995, Pemco transferred Evans to another department, and he has not climbed or worked at heights since that time.   (Plaintiff's deposition at 18; Bonds deposition at 22.)

## B.   Medical Leave Because of Restrictions

Elliott Evans participated in a United Auto Workers strike against Pemco that lasted almost eleven months:  from June of 1996 until April 20, 1997.  (Plaintiff's deposition at 16.)   Following the strike, Pemco recalled Evans to work as a "depainter" in its wash rack department.  (Marks deposition at 14.)

Pemco adopted a policy requiring that all persons returning to work after the strike be able to perform all functions of their positions, so that the greatest amount of work could be performed by the smallest number of employees.[7]  (Marks deposition at 21-22.) Thus, Evans' supervisor, Guy Marks, referred Evans and four other returning strikers to Pemco's medical department when each related physicians' restrictions limiting the functions he or she could perform.  (*Id.* at 16.)   The medical department attempted to identify a position which would not require that Evans climb or work at heights.  (Marks deposition at 26-28.)  All such positions were filled, however, and Pemco eventually placed Evans on medical

---

[7]Pemco claims that it was overmanned prior to the strike, because extra employees were required to perform functions that employees with medical restrictions were incapable of performing.  (Marks deposition at 21-22.)

4

leave. (Plaintiff's deposition at 53, 61-63, 153-54; Marks deposition at 26-27.)

Plaintiff filed an amended charge of discrimination with the EEOC on April 25, 1997, alleging:

> My employee [sic] terminated me on or about April 9, 1997 alleging that they were unable to accommodate me. These [sic] were several jobs and [sic] that I could do within my medical restrictions and I could have easily been accommodated for my disability. In addition, I believe I have been terminated and retaliated against because of my disability and because I filed a Charge of Discrimination and subsequent law suit against Pemco.

(Plaintiff's deposition exhibit 5.)

Pemco recalled Evans from medical leave on June 2, 1997, and assigned him a position in the wash rack department. (Marks deposition at 37-39.) The supervisors of that department created the position for plaintiff. According to Guy Marks: "I think we started doing that job for Mr. Evans to have something to do." (*Id.* at 79.)

Evans presently performs the duties of a "depainter" in Pemco's "gear shop." (Marks affidavit ¶ 2.) In that position, he strips, washes, degreases, brightens, and "allodizes" various parts of aircraft. (Plaintiff's deposition at 13; Bonds deposition at 8.)

## C.   Race Discrimination

Evans also claims he suffered race discrimination while working for Pemco. According to him:

1.   Carl Bonds constantly watched the African-American employees, assigned them the most difficult work, insisted that they perform their work, and

5

"pestered" them. (Plaintiff's deposition at 65, 68, 71, 77.)

2. Carl Bonds forced plaintiff to climb, but would allow white employees with climbing restrictions to refrain from climbing. (*Id.* at 66, 67.)

3. Carl Bonds intimidated African-American employees by making statements such as: "You do this or...." (*Id.* at 77.)

4. Guy Marks constantly criticized plaintiff's work performance, told plaintiff he was too slow, and always sought plaintiff out when he was not at his work station. (*Id.* at 163-68.)

5. Guy Marks directed a racial slur towards plaintiff by saying "Eenie, Meeny, Miny, Moe" and pointing to plaintiff with the word "Moe." (*Id.* at 159-60.) Evans found that phrase offensive, because he believes it usually is completed by saying "catch a nigger by the toe." (*Id.* at 160.)

Furthermore, Evans claims he was exposed to the following offensive

materials:

1. In 1991 or 1992, and again in 1994 or 1995, plaintiff viewed a document entitled "Nigger Application" which alluded to numerous offensive racial stereotypes. (Plaintiff's deposition at 90-91, 96-97; plaintiff's exhibit 20.)

2. Sometime before December of 1994, co-employee Brownell Franklin showed plaintiff a picture of a noose which was hung in Franklin's office. (*Id.* at 133-37.)

3. Plaintiff viewed a noose at the Pemco facility sometime between December of 1994 and March of 1995. (*Id.* at 136-37.)

4. Between December of 1994 and March of 1995, he saw the letters "KKK" written on a box at Pemco's facility. (*Id.* at 137-38.)

6

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..."   Rule 56(c), *Fed.R.Civ.P.* (emphasis added).   The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).   The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).   Rule 56 permits the movant to discharge this burden with or without supporting affidavits.   *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553.   When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor.   *Spence v.*

7

*Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2512.

### III.  ADA DISCRIMINATION

Congress passed the Americans with Disabilities Act of 1990 (ADA) for the stated purpose of providing "a clear and

**8**

comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress sought "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(a)(8). To achieve those purposes, the Act commands that

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Thus, Evans bears the burden of proving by a preponderance of the evidence that defendant intentionally discriminated against him because of his disability. That can be done either by direct or circumstantial evidence. When, as here, the evidence of intent is circumstantial in nature,[8] the Supreme Court has prescribed an analytical process to evaluate the strength of plaintiff's proof. In three decisions rendered over two decades, the Supreme Court "developed a formula for shifting evidentiary burdens between plaintiff and defendant which permits the establishment of intentional discrimination without direct evidence of unlawful motivation." A.C. Modjeska, *Employment Discrimination Law* § 1:09,

---

[8]Plaintiff broadly argues "that he has provided sufficient direct evidence to prove discrimination." (Brief in opposition to summary judgment at 19.) "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude <u>correlating</u> to the discrimination or retaliation complained of by the employee." Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990)(emphasis supplied). Plaintiff has produced no evidence of actions or statements by Pemco reflecting a discriminatory attitude which correlate to his alleged disability. This court thus finds there is no direct evidence of disability discrimination.

9

at 39-40 (3d ed. 1996). The order and allocation of burdens of proof, persuasion, and production were first defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[9] The analytical structure developed by that trilogy has three steps, the ultimate goal of which is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

The first step is satisfied when the plaintiff establishes a *prima facie* case. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a disability; (2) that he is a "qualified individual" (*i.e.*, that he can perform the essential functions of the job position he holds or seeks, with or without reasonable

---

[9]Although the Eleventh Circuit has not explicitly held to the following effect, it nevertheless is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas* and its progeny, and applied in Title VII disparate treatment cases, is similarly followed in deciding cases brought under the ADA. *See* McNemar v. The Disney Store, Inc., 91 F.3d 610, 619 (3d Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958 (1997); Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758, 761 n.2 (5th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958 (1997); *see also* Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 964 (1997)(implicitly using burden-shifting framework); Johnson v. Boardman Petroleum, Inc. 923 F. Supp. 1563 (S.D. Ga. 1996); Lewis v. Zilog, Inc., 908 F. Supp. 931 (N.D. Ga. 1995).

10

accommodation being made by the employer[10]); and, (3) that he was discriminated against because of his disability. *See* 42 U.S.C. § 12132; *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). In addition, a plaintiff must show that the employer had actual or constructive knowledge of his disability. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).

At the second stage of analysis, the burden of production shifts to defendant to rebut the presumption of intentional discrimination thus raised by a *prima facie* case, by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must show by a preponderance of the evidence that defendant's stated reasons are mere pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

## A.   The Prima Facie Case - Is Plaintiff "Disabled"?

The ADA defines the concept of "disability" in a manner that includes any individual:

> (A) who has a *physical or mental impairment* that *substantially limits* one or more of the *major life activities* of such individual; or

---

[10]42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). *See also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position").

11

(B)   who has a *record of* such an impairment; or

(C)   who is *regarded as having* such an impairment.

*See* 42 U.S.C. § 12102(2).  When applying that definition, three questions must be asked: (1) *is the condition an "impairment"?;* (2) *does the impairment "substantially limit" a major life activity?;* and (3) *what qualifies as a "major life activity"?*

### 1.   Is plaintiff's condition an "impairment"?

The ADA does not define those conditions constituting a "physical or mental impairment."  Instead, that phrase, and many other significant terms in the Act, are only defined in regulations promulgated by the Equal Employment Opportunity Commission[11] pursuant to authority delegated by Congress,[12] and, in the "Interpretive Guidance on Title I of the Americans With Disabilities Act" attached as an appendix to those regulations. Those regulations are not binding on this court.  Nevertheless, "courts may rely upon the regulations promulgated by the Equal Employment Opportunity Commission ... for guidance" when interpreting the ADA. *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 911 (11th Cir. 1996).  Moreover, the Supreme Court has long recognized that an agency's interpretation of a statute it is charged with enforcing should be given "considerable weight," and should not be disturbed unless it appears from the statute or

---

[11]*See* 29 C.F.R. § 1630.

[12]*See* 42 U.S.C. § 12116 (requiring the EEOC to issue regulations to implement Title I of the ADA).

12

legislative history that Congress intended a different construction.

> [When] Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see also Griggs v. Duke Power Co.*, 401 U.S. 424, 433, 434, 91 S.Ct. 849, 854-55, 28 L.Ed.2d 158 (1971)(administrative interpretations "entitled to great deference"). The *Chevron* standard is applied by the Eleventh Circuit in the context of ADA claims. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 521 (11th Cir. 1996).

The EEOC's administrative interpretations of the ADA define a "physical impairment" as including:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or ....

29 C.F.R. § 1630.2(h)(1).

Dorland's Illustrated Medical Dictionary defines diabetes as

a disorder

> characterized by excessive urine excretion (polyuria), as in diabetes mellitus and diabetes insipidus. When used alone, the term refers to diabetes mellitus.

13

Dorland's Illustrated Medical Dictionary 456 (W.B. Saunders et al.
eds, 28th ed. 1994).   Nevertheless, it should be observed that
diabetes mellitus "occurs in two major forms: *insulin-dependent
diabetes mellitus* (type I) and *non-insulin dependent diabetes
mellitus* (type II), which differ in etiology, pathology, genetics,
age of onset, and treatment." *Id.* at 457.   Plaintiff presents no
evidence on the form of diabetes mellitus from which he suffers.

Moreover, plaintiff presents no evidence on the effects of his
diabetic condition (whatever its true form may be) on day-to-day
activities, other than climbing or working at heights.   This court
is aware that hundreds of thousands of Americans function well in
their chosen vocations, despite being diagnosed with some form of
diabetes.   Where a plaintiff presents a paucity of evidence on the
nature of his alleged impairment, or its effects on his daily
activities, summary judgment is appropriate.   *See Bradley v.
Harcourt, Brace and Co.,*   104   F.3d   267,   271   (9th   Cir.
1996)(affirming summary judgment where there was no evidence,
beyond plaintiff's own testimony, to establish an impairment).

Notwithstanding the paucity of plaintiff's proof, the EEOC's
broad definition of an "impairment," coupled with the clinical
diagnosis of "diabetes," arguably are sufficient to establish that
plaintiff has an "impairment," even if just barely sufficient.
Nevertheless,   as   the   following   discussion   shall   demonstrate,
plaintiff presents no evidence establishing the other components of
the first element of a *prima facie* case (disability): *i.e.*, there

**14**

is no evidence that plaintiff was "substantially limited" in a "major life activity," possessed a "record of" such, or was "regarded as" suffering from such an impairment.

### 2. Does plaintiff's alleged impairment "substantially limit" a "major life activity"?

"A physical impairment, standing alone ... is not necessarily a disability as contemplated by the ADA. ... The ADA requires that the impairment <u>substantially limit</u> one or more of the individual's <u>major life activities</u>." *Gordon*, 100 F.3d at 911 (citations omitted)(emphasis supplied).[12]

Evans never specifies which of his major life activities are substantially limited, but makes the following argument:

> Mr. Evans is impaired in his ability to <u>walk</u>, <u>climb</u>, and <u>work</u> at heights. Mr. Evans has been restricted from <u>working</u> at heights and <u>climbing</u> indefinitely because of his diabetes and unsteady gait. Mr. Evans is not restricted from performing a job but abroad [sic] range of jobs that require climbing or working at heights. ...

(Brief in opposition to summary judgment at 17 (emphasis supplied).) The EEOC includes "walking" and "working" among its

---

[12]*See also* I B. Lindemann & P. Grossman, *Employment Discrimination Law* 276 (3d ed. 1996):

> The definitions of "major life activity" and "substantial limitation" are closely allied. "Major life activities" are the basic activities that average persons can perform with little or no difficulty, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." "Substantially limits" means either the total inability or a severe restriction on the ability to perform a major life activity (in terms of condition, manner, or duration) as compared to the general population. The determination of whether an individual is "disabled" [therefore] depends on the effect the impairment has on the particular individual's life, and not simply on the name or diagnosis of the impairment. [*Quoting* 29 C.F.R. §§ 1630.2(i), 1630.2(j)(1).]

15

lists of those functions constituting "major life activities." For example, 29 C.F.R. § 1630.2(i) provides that:

>      (i) *Major Life Activities* means functions such as caring for oneself, performing manual tasks, <u>walking</u>, seeing, hearing, speaking, breathing, learning, and <u>working</u>. [Emphasis supplied.]

Further, the Interpretative Guidance attached as an Appendix to that section elaborates as follows:

>      **Section 1630.2(i)  Major Life Activities**
>      This term adopts the definition of the term "major life activities" found in the regulations implementing section 504 of the Rehabilitation Act at 34 CFR part 104. "Major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty.  Major life activities include caring for oneself, performing manual tasks, <u>walking</u>, seeing, hearing, speaking, breathing, learning, and <u>working</u>.  <u>This list is not exhaustive</u>.  For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching.  ...

29 C.F.R. Pt. 1630, App. § 1630.2(i), at 402 (citations omitted)(emphasis supplied).

It first should be noted that EEOC regulations and interpretive guidance do not provide that <u>climbing</u> is a major life activity.  Moreover, this court agrees with the Fifth Circuit, which held that "[c]limbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA."  *Robinson v. Global Marine Drilling Company*, 101 F.3d 35, 37 (5th Cir. 1997)(quoting *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 n.2 (5th Cir. 1996)).

The more difficult question is whether Evans' impairment of diabetes substantially limits the major life activities of walking or working. That phrase, "substantially limits," also is not defined by the ADA, but implementing regulations instruct that it refers to an individual who is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The EEOC further instructs that the following factors should be considered in determining whether a particular individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

### a. Walking

Evans' only evidence of a limitation on his ability to walk is an unauthenticated record from Dr. Steve Hunt, reflecting that he walks with an "unsteady gait." (Plaintiff's deposition exhibit 3.) That evidence does not distinguish Evans from "the average person

17

in the general population," however.  29 C.F.R. § 1630.2(j)(1).  It
also does not provide insight into "the nature and severity of the
impairment," "the duration of the impairment," or the "long term
impact" of the impairment.  29 C.F.R. § 1630.2(j)(2).  Moreover, it
is "clear that moderate difficulty or pain experienced while
walking does not rise to the level of a disability."  *Penny v.*
*United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997); *see also*
*Kelly v. Drexel University*, 94 F.3d 102, 106-07 (3rd Cir. 1996)(hip
disease which caused slow walking, especially while climbing
stairs, was not disabling); *Graver v. National Engineering Co.*,
1995 WL 443944 at * 11 (N.D. Ill. Jul. 25, 1995)(walking with
pronounced limp and experiencing substantial pain while walking was
not substantial limitation).

### b.  Working

Evans also claims he is precluded from "abroad [sic] range of
jobs that require climbing or working at heights."   (Brief in
opposition to summary judgment at 17.)

> When individuals claim that they are substantially
> limited in the major life activity of <u>working</u>, their
> condition "must significantly restrict [their] ability to
> perform <u>either a class of jobs or a broad range of jobs</u>
> <u>in various classes</u> as compared to the  average person
> having comparable training skills and abilities."

*Stewart v. Happy Herman's Chesire Bridge, Inc.*, 117 F.3d 1278, 1285
(11th Cir. 1997)(quoting *Pritchard v. Southern Company Services*, 92

18

F.3d 1130, 1132 (11th Cir.), amended on reh'g, 102 F.3d 1118 (11th Cir.1996)) (emphasis supplied).

The following factors (along with those listed in 29 C.F.R. §
1630.2(j)) should be considered in regard to such a claimed limitation:

(A) The geographical area to which the individual has reasonable access;

. . .

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical region, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A),(C); see also Gordon, 100 F.3d at 911-12 (quoting regulations). Evans presents absolutely no evidence bearing upon those factors. Yet, such evidence is explicitly called for by the EEOC's Interpretative Guidance:

The terms "numbers and types of jobs" and "number and types of other jobs" ... require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., "few," "many," "most") from which an individual would be excluded because of an impairment.

29 C.F.R. Pt. 1630, App. § 1630.2(j), at 403 (emphasis added). Those terms are "not intended to require an onerous evidentiary showing." Id. Nevertheless, by failing to present any comparative employment data, plaintiff has not met even this slight burden.

19

This court therefore concludes that Evans has failed to demonstrate that his impairment substantially limits any major life activity.

### 3.   Does plaintiff have a record of a disability?

Even so, Evans still may be considered "disabled" if he "has a record" of an impairment which substantially limits a major life activity. 42 U.S.C. § 12102(2)(B). Evans claims he does have "a record" of a substantially limiting impairment, because he "has provided substantial evidence from various treating physicians that he had a record at Pemco of a physical impairment as early as 1988, again in 1991[,] and again in 1995." (Brief in opposition to summary judgment at 18.)   In support of that assertion, Evans presents an "Attending Physician's Report" dated September 18, 1988, prepared by Dr. James G. Davis for Pemco's predecessor, Hayes International Corporation. (Plaintiff's exhibit 14.)   That report records a diagnosis of "diabetes mellitas [sic]," and states that Evans is not "fully capable" of climbing or working at heights, but it does not impose any restrictions. (*Id.*)

Evans also relies upon a similar report dated July 8, 1991.[13] (Plaintiff's exhibit 19.)   That report records a diagnosis of tendinitis, and states that Evans is not "fully capable" of climbing. (*Id.*)   Nevertheless, the report provides that plaintiff **is** "fully capable" of working at heights. (*Id.*)

---

[13]The physician's signature on that report is illegible.

20

Finally, Evans presents a record from Pemco's medical services department dated March 29, 1995, which provides that he will be permitted to return to work under the following restrictions: "Mr. Evans [should] not be involved in work activities that involve climbing or working at heights..." (Plaintiff's exhibit 21.)

None of those reports demonstrates a "record" of a substantially limiting impairment, as required by EEOC regulations.

(k) *Has a record of such impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

29 C.F.R. § 1630.2(k)(emphasis supplied). Furthermore, the interpretive guidance demonstrates that an employer must possess some record of a substantially limiting impairment.

This part of the definition is satisfied if a record relied upon by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including, but not limited to, education, medical, or employment records.

29 C.F.R. Pt. 1630, App. § 1630.2(k), at 404 (emphasis supplied).

None of the records relied upon by Evans demonstrate an impairment that "substantially limits" a "major life activity." All are silent on "the nature and severity of the impairment," "the duration or expected duration of the impairment," and the "long term impact" of the impairment. 29 C.F.R. § 1630.2(j)(2). Moreover, they provide no distinction between Evans and "the

21

average person in the general population." 29 C.F.R. §
1630.2(j)(1). Consequently, this court finds that Evans has not
fulfilled his burden of demonstrating a record of a disability.

### 4. Was plaintiff "regarded as" disabled?

Nevertheless, even if an individual cannot satisfy either the
first part of the ADA's definition of "disability," or the second,
"record of" portion, he still may be able to satisfy the third
prong of the definition, providing that a person who is "regarded"
by an employer "as having such an impairment" — *i.e.*, one that
substantially limits a major life activity — is an individual with
a disability. 42 U.S.C. § 12102(2)(C). The EEOC Interpretive
Guidance lists three different ways in which an individual may
satisfy the definition of "being regarded as having a disability":

(1) The individual may have an impairment which is
not substantially limiting but is perceived by the
employer or other covered entity as constituting a
substantially limiting impairment;

(2) The individual may have an impairment which is
only substantially limiting because of the attitudes of
others toward the impairment; or

(3) The individual may have no impairment at all but
is regarded by the employer or other covered entity as
having a substantially limiting impairment.

29 C.F.R. Pt. 1630, App. § 1630.2(1), at 404.

Evans makes the following argument to claim he was "regarded

as" having a disability:

Mr. Evans has also established that Pemco regarded him as
having such an impairment or disability. When Pemco
required that Mr. Evans be 100% able to return to work

22

with no restriction they <u>regarded him as being so disabled that he could not work</u>.

(Brief in opposition to summary judgment at 19 (emphasis supplied).)

For purposes of summary judgment, this court will accept Evans' contention that Pemco considered him unable to work in any job requiring climbing or working at heights. That finding does not end the inquiry, however.

The determination of whether an employer "regarded" an employee as substantially limited in the ability to work is a mixed question of law and fact. *Bridges v. City of Bossier*, 92 F.3d 329, 333 (5th Cir. 1996). "The underlying factual question is how many and which jobs involve [plaintiff's restrictions]," while "[t]he legal issue presented ... is whether disqualification from [those] jobs involving [plaintiff's restrictions] constitutes a substantial limitation on the major life activity of working." *Id.* at 333, 334.

In resolving the factual issue, Evans must present specific evidence that his restrictions, as perceived by Pemco, prevented him from performing either an entire class of jobs or a broad range of jobs in various classes. *See id.* at 333 ("we can rule out most of the jobs listed by [plaintiff] because of a lack of record evidence. [Plaintiff] points to no record evidence that law enforcement personnel are routinely exposed to extreme trauma, and we find none"). Once the court determines "how many and which

jobs" involve Evans' perceived restrictions, it must determine if disqualification from those jobs would constitute a substantial limitation on the major life activity of working. *Id.* at 334.

In the present action, Evans has presented <u>no evidence</u> of "how many and which jobs" at Pemco require climbing or working at heights. That failure alone is sufficient to find that he has failed to meet his burden of demonstrating that he was "regarded as" disabled. See *Ballard v. Vulcan Materials Company*, 978 F. Supp. 751, 756 (W.D. Tenn. 1997):

> In order to carry [the burden of establishing that defendant regarded him as substantially limited from working], a plaintiff must present evidence, expert or otherwise, relating to his vocational skills or training, the geographical area to which he has access, or the number and type of jobs which demand similar training from which he would also be disqualified because of his disability.

Nevertheless, Evans' testimony could be construed to establish that the job of "depainter" in the wash rack department requires climbing and working at heights, and that he was "regarded as" foreclosed from working in that position when he returned from the strike.[14]

This court thus must determine the "legal issue" of whether disqualification from the position of depainter in the wash rack

---

[14]This court refers to the "depainter" position in the wash rack department, as it existed when plaintiff attempted to return to work after the strike. The evidence indicates that defendant considered plaintiff unable to perform that job because of his medical restrictions, and placed him on medical leave. Plaintiff later was assigned to the wash rack department, but defendant created that position "for Mr. Evans to have something to do." (Marks deposition at 79.)

24

department constitutes a substantial limitation on the major life activity of working. *Bridges v. Bossier,* 92 F.3d at 334.

> An impairment does not substantially limit the ability to work merely because it prevents a person from performing either a particular specialized job or a narrow range of jobs. Nor does the inability to perform a single, particular job ... constitute a substantial limitation in the major life activity of working.

*Happy Herman's Chesire Bridge, Inc. v. Stewart,* 117 F.3d 1278, 1285 (quoting *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1133 (11th Cir.), *amended on reh'g,* 102 F.3d 1118 (11th Cir.1996)). Evans' testimony merely indicates that Pemco regarded him as substantially limited in the "single, particular job" of "depainter" in the wash rack department.

This court therefore concludes that Evans has failed to demonstrate he was "regarded as" having an impairment which substantially limits a major life activity. Accordingly, this court concludes that Evans has not demonstrated that he is an individual with a "disability." He therefore has not demonstrated a *prima facie* case, and summary judgment is appropriate on his ADA claims.

## IV. RETALIATION

Plaintiff's complaint does not state a claim for retaliation, but he testified during deposition that Pemco retaliated against him for filing his first charge of discrimination with the EEOC. According to plaintiff, Pemco accommodated other employee's

25

restrictions after the 1996-97 strike, but did not accommodate his
restrictions because of his EEOC charge and lawsuit.   (Brief in
opposition to summary judgment at 20-22.)

The familiar burden-shifting scheme developed by the Supreme
Court for disparate treatment claims under Title VII and the ADA
applies equally well to ADA retaliation claims.   *See Stewart v.
Happy Herman's Chesire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.
1997); *Donnellon v. Fruehauf Corporation,* 794 F:2d 598, 600, *reh'g
denied,* 800 F.2d 267 (11th Cir. 1986).   To establish a *prima facie*
case of retaliation plaintiff must show: (1) statutorily protected
expression; (2) an adverse employment action; and (3) a causal link
between the protected expression and the adverse action. *Goldsmith
v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993).   Pemco
argues that plaintiff cannot demonstrate the requisite causal
connection between the protected activity and adverse employment
action, because six months passed between commencement of this
action and Pemco's refusal to return Evans to work.   Evans fails to
respond to Pemco's argument, and summary judgment therefore is
appropriate for that reason alone.   *See Brewer v. Purvis,* 816 F.
Supp. 1560, 1579 (M.D. Ga. 1993), *aff'd,* 44 F.3d 1008 (11th Cir.
1995)("Summary judgment is appropriate since Plaintiff failed to
respond to [defendant's] argument on this issue"); *see also Wiley
v. Earl's Pawn & Jewelry, Inc.,* 950 F. Supp. 1108, 1113 n.4 (S.D.

26

Ala. 1997); *Southern Nevada Shell Dealers Association v. Shell Oil*, 725 F. Supp. 1104, 1109 (D. Nev. 1989).

Even if Evans established a *prima facie* case, he presented no evidence rebutting Pemco's articulated reason for refusing to immediately return him to work. Pemco claims it did not return Evans to work because financial conditions required that the greatest amount of work be performed by the smallest number of employees. (Brief in support of summary judgment at 18-19; Marks deposition at 21-23.) Thus, Evans and other employees with medical restrictions on their job duties were placed on temporary medical leave, or in positions which did not implicate their restrictions.

To demonstrate that explanation is mere pretext for discrimination, Evans must present evidence that Pemco allowed another employee with similar restrictions to work without medical leave, or that a position existed in which he could have worked regardless of his restrictions. Evans' most persuasive evidence pertains to Pemco employee John Henry Parker. Parker also was restricted from climbing, but he was allowed to work for approximately one week after the strike. (Marks deposition at 23.) There was a discrepancy in Parker's records, however, and Pemco's medical department allowed him to work while they attempted to confirm Parker's restrictions with his doctor. (*Id.* at 22-23.) After one week, Pemco could neither confirm nor discount Parker's restrictions, and he also was placed on medical leave. (*Id.* at 78-

79.)   Therefore, the only other identifiable employee with restrictions similar to Evans was treated in a similar manner. Furthermore, Evans presents no evidence that other jobs were available which he could perform regardless of his restrictions.

Evans also has presented no evidence indicating that financial concerns associated with medical restrictions were not the "real reason" for his medical leave.   *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).   Summary judgment accordingly is appropriate on the retaliation claim.

## V.   TITLE VII DISCRIMINATION

### A.   Disparate Treatment

Evans also "avers that he has been discriminated against on the basis of his race, African American, in job assignments, promotions, and other terms and conditions of employment." (Complaint ¶ 9.)   Defendant moves for summary judgment, to the extent Evans seeks to recover under a theory of disparate treatment.   (Brief in support of summary judgment at 13-15.) Plaintiff provides absolutely no argument indicating that he was subject to disparate treatment.[15]   (*See* brief in opposition to summary judgment at 22-24.)   Plaintiff's failure to respond to

---

[15]Plaintiff broadly argues "that he has provided sufficient direct evidence to prove discrimination."   (Brief in opposition to summary judgment at 19.) "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude <u>correlating</u> to the discrimination or retaliation complained of by the employee."   Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990)(emphasis supplied).   Plaintiff has produced no evidence of actions or statements by Pemco reflecting a discriminatory attitude which correlate to his alleged race.   This court thus finds there is no direct evidence of race discrimination.

28

defendant's argument warrants summary judgment.   *See Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), *aff'd*, 44 F.3d 1008 (11th Cir. 1995)("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue"); *see also Wiley v. Earl's Pawn & Jewelry, Inc.*, 950 F. Supp. 1108, 1113 n.4 (S.D. Ala. 1997); *Southern Nevada Shell Dealers Association v. Shell Oil*, 725 F. Supp. 1104, 1109 (D. Nev. 1989).

## B.   Hostile Work Environment

Evans raises only his hostile work environment claims in opposition to defendant's motion for summary judgment on his Title VII claims.   (Brief in opposition to summary judgment at 22-24.) To establish a claim for a racially hostile work environment, plaintiff must show that he:   1) belongs to a protected class; 2) was subjected to unwelcome harassment; 3) the harassment was based on his race; 4) the harassment affected a term, condition, or privilege of his employment, in that it was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment; and 5) *respondeat superior*.   *See Perryman v. West*, 949 F.Supp. 815, 822 (M.D. Ala. 1996); *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1987).   Pemco alleges Evans cannot fulfill the fourth or fifth elements of a *prima facie* case.

29

## 1. The alleged harassment was neither severe nor pervasive

Evans has offered a plethora of evidence to support his hostile work environment claim. However, much of that evidence is irrelevant or inadmissible.[16] This court only will consider Evans' testimony that:

- a. Sometime before December of 1994, Brownell Franklin showed him a picture of a noose which hung in his office for five months. (*Id.* at 133, 137.)

- b. Evans was exposed to a noose at Pemco's facility on one occasion between December of 1994 and March of 1995. (*Id.* at 136-37.)

---

[16]This court will not consider the "Eenie, meenie, minie, moe" statement attributed to Guy Marks. (Plaintiff's deposition at 159-60.) To construe that as evidence of a racially hostile work environment would implicate the Fifth Circuit Court of Appeals as a racist body: "OSHA is merely playing a rational version of eenie-meenie-minie-moe so as to select someone neutrally for an inspection." United States Department of Labor v. Kast Metals Corp., 744 F.2d 1145, 1155 (5th Cir. 1984)(emphasis supplied). This court will treat the utterance in the same way: assuming Guy Marks made the remark, it will be considered a neutral method of choosing an employee to perform a job.

This court also will not consider plaintiff's exhibit 15: twenty-three identical, unsworn, unauthenticated, typed statements by alleged Pemco employees attesting to discrimination by Pemco and Carl Bonds. All exhibits must be authenticated before they may be considered at the summary judgment stage. *See First National Life Insurance Company v. California Pacific Life Insurance Company*, 876 F.2d 877, 881 (11th Cir. 1989); *White v. Wells Fargo Guard Services*, 908 F. Supp. 1570, 1579 (M.D. Ala. 1995); *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 911 (M.D. Fla. 1995)("for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of the summary judgment rule"); *Burnett v. Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 683 (N.D. Ga. 1993); *aff'd*, 42 F.3d 645 (11th Cir. 1994)("In order for a document to be considered in support of or opposition to a motion for summary judgment it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence").

Plaintiff also relies upon Carl Bonds' testimony that he found several nooses in his office (Bonds deposition at 26-28), and upon Guy Marks' testimony that he heard racial jokes at Pemco. (Marks deposition at 57.) Plaintiff cannot rely upon those incidents to demonstrate a hostile work environment, because there is no evidence that he was aware of them until depositions were taken in this action. *See* Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995)("some of the incidents relied upon were not made known to Edwards until after her termination and, therefore, could not have contributed to her subjective view of a hostile environment").

       c.    He viewed the letters "KKK" at Pemco's facility on
           one occasion between December of 1994 and March of
           1995. (*Id.* at 137-38.)

       d.    He also saw a "Nigger Application" in 1991 or 1992
           and again in 1994 or 1995. (*Id.* at 90-91, 96-97.)

Pemco argues that such evidence does not demonstrate an objectively hostile work environment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Systems Inc.*, 510 U.S. 17 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

In evaluating whether harassment is sufficiently severe or pervasive to bring it within Title VII's purview, courts must examine the totality of circumstances, including: "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. After careful consideration of the entire record, this court concludes that the conduct of which Evans complains is neither sufficiently severe nor pervasive to create an environment that a reasonable person would find hostile or abusive.

The exact frequency of the five alleged instances of racist conduct is impossible to determine from Evans' testimony, but they clearly were not contemporaneous. Rather, they were separated by

31

a period of months or, possibly, a period of years.  This court acknowledges that nooses and the letters "KKK" not only are offensive to African-Americans, they also could be perceived as physically threatening.  Even so, and most importantly, Evans has presented no evidence indicating that the alleged conduct had any effect on his work performance.    This court thus concludes that Evans has failed to present adequate evidence that the alleged harassment was sufficiently severe or pervasive to affect a term or condition of his employment, and summary judgment is appropriate.

    **2.    Pemco cannot be held liable for the acts of its agents**

Pemco also is entitled to summary judgment on the hostile work environment claim, because Evans has produced insufficient evidence to hold it liable under the doctrine of *respondeat superior*. Where, as here, Evans seeks to hold his employer directly liable for the acts of co-employees,[17] he must show:

> the employer knew or should have known of the harassment and failed to take prompt remedial action.  ...  A plaintiff can prove an employer's knowledge of harassment by showing that she complained to higher management.  ...
> ...
>     A plaintiff also can prove an employer's knowledge by showing that the harassment was pervasive enough to charge the employer with constructive knowledge.

---

[17]An employer also may be indirectly liable for the acts of its employees if (1) a harasser acts within the scope of his employment in perpetrating the harassment or (2) a harasser acts outside the scope of his employment, but is aided in accomplishing the harassment by the existence of the agency relationship.  Faragher v. City of Boca Raton, 111 F.3d at 1536.  Plaintiff does not suggest that Pemco could be indirectly liable for the alleged harassment, and this court's review of the record finds no facts establishing indirect liability. Thus, this court will limit its review to Pemco's direct liability for the alleged harassment.

**32**

*Faragher v. City of Boca Raton*, 111 F.3d 1530, 1538 (11th Cir.)(en banc), cert. granted, ___ U.S. ___, 118 S.Ct. 438, 139 L.Ed.2d 337 (1997). Evans presents no evidence that he complained to "higher management" about the alleged harassment.[18]  Thus, he must show "that the harassment was pervasive enough to charge [Pemco] with constructive knowledge."

The inquiry into the pervasiveness of harassment for purposes of determining constructive knowledge is wholly separate from the inquiry for purposes of determining whether a term or condition of employment has been adversely affected. *Faragher v. City of Boca Raton*, 111 F.3d at 1538.  The Eleventh Circuit has considered the following factors to determine if harassment is sufficiently pervasive to provide constructive notice to an employer:

> the remoteness of the location of the harassment as compared to the location of management; whether the harassment occurs intermittently over a long period of time; whether the victims were employed on a part-time or full-time basis; and whether there were only a few, discrete instances of harassment.

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997). The parties present no evidence on the location of Pemco's management or on Evans' status as a part-time or full-time employee.  Even so, this court finds that the conduct complained of

---

[18]In fact, plaintiff offers no evidence that he complained to anyone regarding the alleged harassment.  This court's independent review of the record demonstrates that plaintiff made complaints, but does not identify to whom those complaints were made, or their ranking with Pemco's corporate structure.  (See plaintiff's deposition at 74, 94, 101, 104-05.)  Without evidence that plaintiff complained to someone who "was considered higher management" this court cannot impute actual knowledge to Pemco.  *Reynolds v. CSX Transportation, Inc.*, 115 F.3d 860, 867 (11th Cir. 1997).

was not sufficiently pervasive to place Pemco on notice, because it
occurred intermittently over a period of five years and plaintiff
only raises five discrete instances of harassment. Pemco cannot be
charged with constructive knowledge of the alleged harassment, and
summary judgment is appropriate.

## VI.   CONCLUSION

For the foregoing reasons, this court concludes that defendant
is entitled to summary judgment on all claims. An order consistent
with this memorandum opinion will be entered contemporaneously
herewith.

DONE this the 20 day of February, 1998.

United States District Judge

34